## WILLIAM PRESCOTT Jr. vs. WILLIAM ELM.

The notice, required by the Rev. Sts. c. 60, § 26, for the determination of an estate at will, when the rent reserved is payable at periods of less than three months, must not only be as long as the interval between the days of payment, but must terminate at the expiration of such an interval.

The date of a notice to quit, given by a landlord to his tenant, cannot be presumed, in the absence of other evidence, to be one of the days on which rent was payable.

THIS was an action on the Rev. Sts. c. 104, to recover possession of a parcel of land, with a dwelling-house thereon, situated on Chelsea Street in East Boston, and was commenced on the 24th day of October, 1848.

At the trial in the court of common pleas, before *Perkins*, J., there was evidence tending to prove that the defendant was a tenant of the plaintiff, and that the rent was payable monthly; but no evidence was offered, by either party, to show on what day of the month the rent became due. It was in evidence, that on the 21st day of September, 1848, the plaintiff gave the defendant the following notice in writing: " City of Boston, September 21st, A. D. 1848. To William Elm. You being in possession of a dwelling-house, and land under the same, situated and being in or near Chelsea Street, East Boston, in the city of Boston aforesaid, are hereby notified to quit and deliver up to me the premises aforesaid. Hereof fail not, or I shall take a due course of law to eject you from the same.

Witness, A MOORE.                    WM. PRESCOTT, Jr."

The plaintiff relied on said notice, and not on any evidence of non-payment of rent. And the defendant, admitting that a month's notice was sufficient, requested the court to rule that, as the action was commenced on the 24th day of October, 1848, the notice was insufficient, because, as the defendant contended, it should appear that the notice covered an entire period intervening between the times of paying rent; that is, if the rent was payable on the first day of each month, and notice was given on the 21st day of September, the tenant was under no obligation to remove, and the plaintiff could not commence his action until the first day of November. But

the court declined so to rule, and instructed the jury, that if the rent was payable monthly, and a month's notice to quit was given, it was sufficient. The jury returned a verdict for the plaintiff, and the defendant alleged exceptions to said in-structions.

*D. Morgan,* for the defendant.

*S. C. Maine,* for the plaintiff.

The opinion of the court was given at the November term, 1852.

METCALF, J. A question is now raised, for the first time, as to the construction of that part of § 26 of *c.* 60, of the re-vised statutes, which provides that an estate at will, when the rent reserved is payable at periods of less than three months, may be determined, by either party, by a notice in writing, if the time of such notice " be equal to the interval between the days of payment." That interval, in the present case, was one month; but whether the times of payment were the first or some other day of each month, does not appear The notice to quit was given to the defendant on the 21st day of September, 1848; and this action was commenced on the 24th day of October following. The notice, therefore, was within the letter of the statute; that is, the defendant had a month's notice. The question is, whether the notice ought not to have been to quit at the expiration of a month from the day when the rent was payable. And we are of opinion that it ought to have been.

The reasons for our opinion are these : Before the passing of *St.* 1825, *c.* 89, which contained a provision like that in Rev. Sts. *c.* 60, § 26, which we are now considering, the law concerning the right of tenants at will and their landlords to notice, in order to determine the tenancy, was extremely doubtful. Some of the judges of this court held that such tenants and their landlords should have the same rights and be held to the same duties here, which pertained to them, and bound them, by the law of England. The other judges held that the English law was not in force here, and that the land-lord might terminate the tenancy, without notice to the te-nant, and that the tenant had only a right to a reasonable time,

after such termination of his tenancy, to remove his effects; and that it was to be decided by the court, as a question of law, in each case, what was a reasonable time for removal by the tenant. See *Howard* v. *Merriam*, 5 Cush. 570, 572. The *St.* of 1825, was intended to remove these doubts, and to adopt the *principle* of the English common law, except in cases of a tenant's refusal or neglect to pay rent due. That law not only requires that written notice shall be given, in order to terminate a tenancy at will, but also prescribes the length of the notice, in all cases except those in which the parties, either by express stipulation, or by agreement implied from custom, have otherwise contracted. In tenancies from year to year, (so called,) six months' notice is required. In a tenancy for less than a year, as for a quarter, a month or a week, the length of the notice is regulated by the letting; that is, a quarter's, a month's or a week's notice must be given. But the expiration of the notice must be with the expiration of the quarter, month or week. A notice to quit, which breaks into the quarter, month or week, is not a good notice. Comyn on Land. & Ten. 269; 23 Wend. 619. So, when the parties to a *written* lease of premises from one year, or other period, to another, expressly agree that the tenancy may be terminated by a notice of shorter length than the law would otherwise require, that notice, in order to be valid, must expire with the year or other period. *Doe* v. *Donovan*, 1 Taunt. 555; *Doe* v. *Green*, 9 Adolph. & Ellis, 658. And it has recently been held in this commonwealth, (*Baker* v. *Adams*,. 5 Cush. 99,) that where there was a provision, in a written lease for five years, that either party might terminate it by giving the other party six months' notice, the notice must be given so as to expire at the end of a year of the term.

The *St.* of 1825, *c.* 89, § 4, which, as already has been said, enacted the principle of the common law of England, except as to tenants who do not pay rent due, was passed at the next session of the legislature held after the publication of the case of *Coffin* v. *Lunt*, 2 Pick. 70, which left it doubtful whether, by our law, a tenant at will was entitled to notice to quit. By that statute, which is reënacted, so far as it respects te-

nants at will, by the Rev. Sts. *c.* 60, § 26, it was provided that three months' written notice, given by either party to the other should be sufficient in all cases; and that when the rent re-served should be payable at periods of less than three months, a notice equal to the interval between the times of payment, should be sufficient. Thus the legislature have expressly en-acted that the length of the notice, which is required by the common law of England, shall be sufficient. when rent is payable oftener than quarterly, without expressly enacting at what time the notice shall expire, or what shall be the form of such notice. But we are of opinion that the form of the notice, and the time when the tenant is to quit, are both to be decided by the rules of the common law. For it is an esta-blished canon, in the interpretation of statutes, that they are to receive such a construction as may be agreeable to the common law, and that they are not presumed to make any alteration in that law, further or otherwise than the statutes themselves expressly declare. 11 Mod. 150; 2 Dwarris on Statutes, 696; 1 Kent Com. (6th ed.) 463. This rule of con-struction is constantly resorted to, in construing our revised statutes; and, without resort to it, many of the provisions of those statutes would be wholly inoperative. In the case be-fore us, this rule of construction is specially commended to our adoption, by its certainty, convenience and justice. It gives the landlord rent, and obliges the tenant to pay it, so long as the demised premises are occupied, and no longer. Whereas, upon the construction for which the plaintiff con-tends, the landlord or the tenant must always be a loser, when the tenancy is terminated in the interval between the rent days. *Leighton* v. *Theed,* 1 Ld. Raym. 707, and 2 Salk. 413. See *Executors of Godard* v. *South Carolina Railroad Com-pany,* 2 Richardson's (S. C.) Rep. 346.

The case must go back to the court of common pleas for a new trial. If, on such trial, it shall appear that the rent was payable on the 21st of each month, then the plaintiff may re-cover, unless the notice was defective in not mentioning the time when the defendant was required to quit. As that ques-tion has not been argued, we give no opinion upon it.

It was suggested for the plaintiff, that as the notice to quit was given on the 21st of the month, it was to be presumed — nothing to the contrary appearing — that the tenancy commenced on that day.    No authority was cited in support of this position ; and there is none which supports it in the case of a notice like this.    It seems that, by the English law, when notice is served on a tenant in person, requiring him to quit *at a certain day*, and he reads the notice and makes no objec-tion to the time, or promises to quit as soon as he can, this is evidence from which a jury may infer that the tenancy began at the time at which the notice would expire.    Archb. Land. & Ten. 218.    When a case of that kind shall occur here, the court will decide, if necessary, whether that part of the English law is applicable to notices under the Rev. Sts. *c.* 60,

*New trial ordered.*